* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. All parties are subject to the Workers' Compensation Act. *Page 2 
2. The date of the alleged injury is May 30, 2002.
3. An employer and employee relationship existed between plaintiff and defendant-employer on May 30, 2002.
4. Broadspire was the carrier on the risk on May 30, 2002.
5. Plaintiff's average weekly wage on May 30, 2002 was $736.70 yielding a compensation rate of $491.14.
6. Defendants acknowledge that an explosion occurred in plaintiff's work area on or about May 30, 2002 but deny that plaintiff suffered any injurious consequence from the explosion.
7. All medical records and reports relating to treatment of plaintiff's alleged injuries may be submitted into evidence.
8. The Industrial Commission may take judicial notice of all Industrial Commission forms in the Commission's files regarding these matters. To the extent the forms are not a part of the Industrial Commission's file, the parties may provide them.
9. Plaintiffs' medical records regarding this claim are admitted into evidence and include the records of Graystone Ear, Nose and Throat Associates, P.A.
10. Plaintiff's issues for hearing are as follows:
 (a) Whether plaintiff sustained a compensable injury by accident.
 (b) If so, what are the compensable consequences?
 Defendants' issues for hearing are as follows:
 (a) Whether plaintiff's hearing loss is a result of an explosion at work occurring on or about May 30, 2002.
 (b) If so, to what benefits is plaintiff entitled? *Page 3 
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of hearing before the Deputy Commissioner, plaintiff was 61 years of age. He has earned two Associate Degrees.
2. Plaintiff worked for defendant-employer as a mechanic since September 14, 1987.
3. On May 30, 2002, while in the course and scope of his employment, plaintiff was injured when an expansion joint in an air compressor exploded while under pressure. At the hearing before the Deputy Commissioner, plaintiff testified that he was standing approximately three feet away from the compressor when there was a loud explosion that knocked him down on the floor. He further testified that he could not hear and his ears were ringing.
4. Plaintiff did not seek medical treatment until almost one month later on June 28, 2002, when he presented to Dr. Frank Mauldin, an otolaryngologist, at Graystone Ear, Nose and Throat Association to have his hearing checked and reported ringing in his ears. Mr. Kerry Poovey, the safety manager at that time for defendant-employer, made the appointment for plaintiff.
5. Upon examination, Dr. Mauldin found "Ear canals filled with hair, required extensive trimming and cleaning. Large cerumen impaction on left, required extensive cleaning under microscope. 20 minutes." Dr. Frank Mauldin diagnosed plaintiff with bilateral sensorineural hearing loss, tinnitus and "dense cerumen impactions with hair impactions." Dr. Mauldin prescribed Amitriptyline to relieve the tinnitus, or ringing, which had interfered with plaintiff's sleep. Dr. Mauldin advised plaintiff to return in one year for a recheck unless problems warranted an earlier appointment. *Page 4 
6. On December 13, 2002, plaintiff returned to Dr. Mauldin with continued complaints of bilateral tinnitus. After Dr. Mauldin removed built-up earwax from plaintiff's ears, the tinnitus symptoms diminished. Dr. Mauldin continued plaintiff's prescription of Amitriptyline to relieve his symptoms of tinnitus.
7. Plaintiff again presented to Dr. Mauldin on March 25, 2003, complaining of ringing and hearing loss in the left ear. Dr. Mauldin again removed a large amount of wax from plaintiff's left ear and a small amount of wax and hair from his right ear. Plaintiff's diagnosis remained bilateral sensorineural hearing loss, tinnitus and bilateral cerumen impactions.
8. At plaintiff's June 17, 2003 visit to Dr. Mauldin, Dr. Mauldin noted no other new problems. Dr. Mauldin recommended hearing amplification as he opined it would help not only plaintiff's hearing loss but also his tinnitus.
9. Plaintiff testified that at the time of the explosion, there was one other employee in the room with plaintiff but that he was approximately twelve feet away from the compressor, while plaintiff had been approximately three feet away. Plaintiff testified that to his knowledge no one else complained of hearing loss as a result of the explosion. This fact was corroborated by the testimony of Mr. Scott Marcus Hager, the Safety Director for defendant-employer.
10. Plaintiff did not miss work due to the incident on May 30, 2002.
11. The medical evidence of record reveals that four years earlier, plaintiff had presented to Dr. Mauldin on July 30, 1998 with complaints of severe vertigo associated with nausea. Dr. Mauldin diagnosed plaintiff with vestibular neuritis, which is an inflammatory condition of the balance nerve that sometimes occurs after an upper respiratory infection, which can make one dizzy. An audiogram taken at that time revealed mild low frequency and moderate high frequency sensorineural hearing loss that was symmetric. Dr. Mauldin opined that the most *Page 5 
common reason for this type of hearing loss was noise exposure. Dr. Mauldin testified, "In most cases, the high-frequency sensorineural hearing pattern that we're seeing on the audiogram dated July 30, 1998 is a cumulative effect of noise that we're exposed to through life, whether it be — whatever the source: recreation, hobbies, work, et cetera." This was the only time plaintiff was seen by Dr. Mauldin prior to May 30, 2002.
12. When Dr. Mauldin was asked to compare plaintiff's audiogram of July 30, 1998 with the one he had four years later on June 28, 2002, he observed that at several frequencies there appeared to be approximately a ten-decibel change or worsening of the hearing over the four-year period. According to Dr. Mauldin, there was only one frequency that did stand out as a change, a fifteen-decibel drop at 1,000 hertz that was not likely to be explained by just the passage of four years. There was no evidence as to the decibel level of the compressor explosion on May 30, 2002. Dr. Mauldin testified that plaintiff never mentioned any concerns to him regarding exposure to noise and Dr. Mauldin made no reference to an explosion in his notes on June 28, 2002. In fact, Dr. Mauldin testified that if plaintiff had mentioned the explosion or concern about exposure to high noise levels, he would have recorded it in his notes as the reason for the visit.
13. Dr. Mauldin opined that plaintiff's exposure to noise from the pressure valve explosion on May 30, 2002 "could have" contributed to plaintiff's tinnitus and "may have" contributed to his hearing loss. However, Dr. Mauldin also opined that it was highly likely that the type of acoustic trauma from the May 30, 2002 explosion, which plaintiff described at the hearing before the Deputy Commission could have produced only temporary hearing loss that would have cleared up prior to his visit on June 28, 2002. *Page 6 
14. The Full Commission finds that the medical evidence presented is insufficient to establish a causal connection between plaintiff's bilateral sensorineural hearing loss and tinnitus and the May 30, 2002 compressor explosion.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. "In a workers' compensation claim the employee has the burden of proving that his claim is compensable." Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). In many instances, the facts in evidence are such that any layman of average intelligence would know what caused a person's injuries; however, the exact nature and cause of some injuries must be established by expert opinion evidence. Click v.Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley, 357 N.C. at 232, 581 S.E.2d at 752.
2. In the instant case, plaintiff has failed to carry his burden of proving causation with the requisite degree of medical certainty. As such, plaintiff's claim for benefits must fail. Id.
3. Plaintiff is not entitled to benefits under the N.C. Workers' Compensation Act.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD 1. Plaintiff's claim for Workers' Compensation benefits is denied. *Page 7 
2. Defendants shall bear the costs.
This the __ day of May 2007.
S/__________________________
PAMELA T. YOUNG
COMMISSIONER
CONCURRING:
S/__________________________
LAURA KRANIFELD MAVRETIC
COMMISSIONER
S/__________________________
DIANNE C. SELLERS
 COMMISSIONER *Page 1